Pamela K. **FERGUSON, Plaintiff,**

v.

The **PRUDENTIAL INSURANCE COM-
PANY OF AMERICA, Heritage Com-
munications, Inc., and Heritage Com-
munications Employee Benefit Plan
and/or Rollins Communications, Inc.
Group Medical Plan, Defendants.**

No. CIV–90–184–B.

United States District Court,
W.D. Oklahoma.

Oct. 18, 1991.

Roy S. Dickinson, Jerry D. Kirksey, Kirksey & Associates, Edmond, Okl., for plaintiff.

Mark D. Spencer, Arlen E. Fielden, Crowe & Dunlevy, Oklahoma City, Okl., for defendant Prudential Ins. Co. of America.

Gary D. Pierson, Tony G. Puckett, Lytle, Soule & Curlee, Oklahoma City, Okl., for defendants Heritage Communications, Inc. and Heritage Communications Employee Ben. Plan and/or Rollins Communications, Inc., Group Medical Plan.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

BOHANON, District Judge.

This matter came on for trial before the court sitting without a jury on the claim of the Plaintiff, Pamela K. Ferguson, for the recovery of accrued benefits under the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461, for the failure of the Defendants to provide medical insurance benefits under a group policy of insurance. Having heard the testimony of the witnesses and the arguments of counsel and having carefully reviewed the parties' exhibits, the court makes the following findings of fact and draws the following legal conclusions therefrom. Fed.R.Civ.P. 52(a).

### Findings of Fact

1. Plaintiff was an employee of Rollins Communications, Inc. ("Rollins"). While Plaintiff was employed by Rollins, she was eligible for insurance benefits under Rollins' employee welfare benefit plan.

2. Plaintiff suffered a head injury on March 15, 1986. She was hospitalized in St. Anthony Hospital in Oklahoma City, Oklahoma, until approximately April 10, 1986. She received acute in-patient therapy at O'Donoghue Rehabilitation Center in Oklahoma City, Oklahoma, from approximately April 10, 1986, to August 8, 1986. Plaintiff was discharged from O'Donoghue and returned home to live with her parents. Plaintiff subsequently received out-patient therapy at Presbyterian Hospital in Oklahoma City for approximately one year—from approximately October 9, 1986, through September 24, 1987. All such medical treatment was recommended by her medical doctors and was approved by Prudential Insurance Company ("Prudential") and paid for under the Rollins Plan.

3. Rollins Communication, Inc. was purchased by Heritage Communications, Inc. ("Heritage") on or about November 1,

1986. Although Plaintiff was not an active employee of Heritage because of her injury, she was covered by the Rollins Plan through December 31, 1986. Beginning January 1, 1987, Plaintiff remained on the plan pursuant to her COBRA rights, 29 U.S.C. §§ 1161–1168. Plaintiff's COBRA coverage extended eighteen months until June 30, 1988.

4. On November 1, 1986, Heritage had established and maintained an employee welfare benefit plan which existed at the time of the acquisition (the "Heritage Plan"). The Heritage Plan was self-funded, meaning that Heritage used corporate revenues to pay benefits.

5. Due to her injury, Plaintiff was never actively at work at Heritage. However, Heritage decided to continue giving extended benefits to Plaintiff in accordance with the Rollins Plan.

6. Heritage had contracted with Prudential under an administrative services only agreement ("ASO Agreement") to act as the claims fiduciary on behalf of the Heritage Plan. In this capacity, Prudential had the narrow responsibility to evaluate claims for benefits thereunder. Prudential did not act on behalf of Heritage (as opposed to the Heritage Plan) in any way and was not involved in the establishment of the Heritage Plan.

7. Under the ASO Agreement, Prudential was granted full discretionary authority to make those decisions regarding Plan benefits. Under Prudential's fee arrangement with Heritage, Prudential was paid a percentage of the claims which it approved. Prudential received no compensation for claims which it denied.

8. Prudential had a stop-loss agreement with Heritage whereby Prudential would reimburse Heritage if the annual aggregate amounts incurred by a participant exceeded $100,000.00. The stop-loss agreement between Heritage and Prudential was in effect when Heritage acquired Rollins.

9. Plaintiff was a known risk and had a preexisting condition at the time Heritage acquired Rollins. Prudential and Heritage expressly agreed that individuals not actively at work on November 1, 1986, were outside the stop-loss arrangement. Prudential's documents state that three named persons, including Plaintiff, were not covered by the stop-loss agreement. *See* Prudential's Ex. 33 and Plaintiff's Ex. 33. However, Heritage retained Prudential to act as claims fiduciary with respect to claims for benefits by those persons.

10. Prudential evaluated Plaintiff's requests for benefits under the terms of the Rollins Plan. The Rollins Plan only provides covered for expenses which are "medically necessary usual and customary." The Heritage Plan similarly covers only those services which are "reasonably necessary."

11. After Plaintiff was no longer undergoing out-patient therapy at Presbyterian, Prudential received two requests for a predetermination of benefits, one approximately September of 1987 for in-patient confinement at Timber Ridge Ran, a division of New Medico, Lynn, Massachusetts and another approximately January of 1988 for in-patient confinement at Rancho Los Amigos Medical Center, Downey, California. *See* Claim File, Prudential's Ex. 45 at 306–07. Plaintiff has stipulated that she was not eligible for treatment at Timber Ridge Ranch since it did not meet the definition of a hospital under the Plan. After due consideration of the Rancho Los Amigos request, including a review by Prudential's medical department, Prudential determined that in-patient confinement was not covered under the terms of the Plan. *See* Claim File, Prudential's Ex. 45 at 927.

12. Plaintiff then requested in-patient treatment at Healthcare Rehabilitation Services in Austin, Texas. Prudential again determined that in-patient therapy was not medically necessary. *See, e.g.,* Claim File, Prudential's Ex. 45 at 381. However, Prudential approved out-patient therapy which Plaintiff accepted and received at Healthcare from approximately February 22, 1988, to June 30, 1988, at which time she was discharged. All medical services were paid by the Rollins Plan.

13. Upon reviewing the administrative record before Prudential, the court notes

that Plaintiff's treating physicians repeatedly stated that Plaintiff had made excellent progress in her therapy, was able to work, drive, assume independent responsibilities, function autonomously and independently in daily living skills. *See, e.g.,* Claim File, Prudential's Ex. 45 at 410, 666–67, 690–91, 694–96, 697, 699, 701–02, 705–06, 714–15, 716, 721, 726–29, 733.

14. The administrative record shows that Plaintiff had received approximately one year's treatment on an out-patient basis prior to requesting the in-patient treatment at issue in this lawsuit. Medical documentation, including letters from Plaintiff's treating physician, recognized that Plaintiff had successfully completed out-patient therapy.

15. Prudential's decision was not influenced by any conflict of interest because no conflict existed. Prudential's decision was not and could not have been influenced by the stop-loss agreement because of its compensation arrangement with Heritage and because Plaintiff was outside the stop-loss agreement.

### Conclusions of Law

1. Plaintiff's claim is brought pursuant to ERISA. Plaintiff claims that she should have been granted benefits for in-patient care at Rancho Los Amigos in Downey, California, or in-patient care at Healthcare Rehabilitation Services in Austin, Texas. Defendants deny that Plaintiff was entitled to in-patient care at either facility under the provisions of the Plan and contend that Plaintiff received appropriate medical care as an out-patient at Healthcare Rehabilitation Services between February and June of 1988.

2. The standard of review for Prudential's decision is whether the decision was arbitrary and capricious. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

3. Prudential's decision that in-patient benefits were not covered was not arbitrary and capricious based on the evidence submitted by Plaintiff at the time of her request.

4. Prudential had only the fiduciary responsibility to review claims and determine if they were payable under Plan provisions. Prudential had a fiduciary duty to the Plan not to arbitrarily or capriciously disburse plan assets or abuse its discretion by approving claims which were excluded under the terms of the Plan. *See* 29 U.S.C. § 1104; *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142 n. 9, 105 S.Ct. 3085, 3090 n. 9, 87 L.Ed.2d 96 (1985).

5. Prior to Prudential's denying Plaintiff's request for in-patient therapy, Plaintiff had demonstrated that she was capable of living independently and receiving therapy on an out-patient basis. Therefore, Prudential's decision was correct and was neither arbitrary nor capricious.

6. Prudential did not act under any conflict of interest with regard to Plaintiff's requests. Consequently, this court must affirm Prudential's determination because it was neither arbitrary nor capricious. Judgment in favor of Defendants will issue accordingly.