**HEALTH COST CONTROLS, Plaintiff,**

**v.**

**Richard L. SKINNER, et al., Defendants.**

No. 94 C 307.

United States District Court,
N.D. Illinois, E.D.

Jan. 20, 1994.

James John Merriman, for plaintiff.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Health Cost Controls ("HCC") has filed this multi-count multi-defendant lawsuit, seeking to invoke federal jurisdiction under a provision of the Employee Retirement Income Security Act ("ERISA")—its Section 1132(a)(3).[1] Based on its initial review of the

1. This opinion's citations to ERISA provisions will take the form "Section—," referring to the numbering within Title 29 rather than (as is frequently done) to ERISA's internal numbering. In this instance Complaint ¶ 9 mistakenly refers

Complaint,[2] this Court sua sponte dismisses not only the Complaint but this entire action for lack of subject matter jurisdiction.

HCC attempts to bring itself within ERISA's right-to-sue provisions by identifying itself as a "fiduciary" under the definition of that term set out in Section 1002(21)(A) (Complaint ¶ 10). By way of explanation, Complaint ¶ 3 alleges that HMO Illinois, Inc. ("HMO Illinois") has been the provider of "managed care services" for some participants under an employee welfare benefit plan established by Mobil Oil Corporation ("Mobil")—in this instance such services were provided for a family member of a Mobil employee. Complaint ¶ 8 then alleges that HCC has been designated by HMO Illinois "to prosecute all of its rights to subrogation and reimbursement under the [Mobil] Plan."[3]

On that scenario HCC's self-description does not at all appear to qualify it as an ERISA "fiduciary." And if that fundamental doubt were to be resolved against HCC (as would appear likely), that alone would be enough to dispatch this lawsuit. But because HCC's claimed "fiduciary" status is used as the springboard for its asserted action under Section 1132(a)(3), and because HCC's ability to bring this lawsuit under *that* provision is so clearly nonexistent, this opinion will pass for the moment the question as to the propriety of HCC's wrapping itself in the "fiduciary" mantle.

Instead this Court turns directly to Section 1132(a)(3), which reads this way:

A civil action may be brought—

\*      \*      \*      \*      \*      \*

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Two things should be noted about that provision:

1. Fiduciaries are entitled to seek only *equitable* relief. Although the Section 1132(a)(3)(B)(ii) phrase "to enforce any provisions of . . . the terms of the plan" speaks in generic terms, it is expressly cabined by the predecessor limitation: a fiduciary is entitled only "to obtain other appropriate equitable relief" for that purpose.[4]

2. By direct contrast, fiduciaries are *not* listed among the permissible plaintiffs in Section 1132(a)(1). Although that provision does confer broad-based and unqualified plan enforcement powers, it bestows those powers *only* on plan participants or beneficiaries. "Fiduciaries" are conspicuous by their absence from that general power of enforcement.

In this instance the definitive teaching as to the reading of ERISA's remedial provisions under such circumstances comes from no less than the Supreme Court in *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146, 147, 105 S.Ct. 3085, 3092, 3093,

to 29 U.S.C. § 1132(3), but that is obviously based on HCC's counsel's having misread the statutory format.

2. This Court always undertakes an immediate review of newly-filed complaints; see *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir.1986):

The first thing a federal judge should do when a complaint is filed is check to see that federal jurisdiction is properly alleged.

3. As a minor digression, HCC's acknowledgment that it is not suing in its own right—it is plainly an agent for HMO Illinois, not an assignee of its claims—admits a violation of Fed.R.Civ.P.

("Rule") 17(a), under which the real party in interest (HMO Illinois) must be plaintiff here. But that flaw would be readily curable under Rule 17(a) if this action were to survive, so this opinion will not pause on the issue.

4. It seems pretty plan that HCC's counsel recognizes HCC's vulnerability in this respect. Complaint ¶ 11, the allegation of jurisdiction, claims that ERISA is in play "inasmuch as this Complaint concerns actions to enforce the terms of the Plan and for equitable relief as authorized by ERISA and the federal common law." That phraseology improperly inverts the statute by treating HCC as entitled "to enforce the terms of the Plan" *without reference to the equitable relief limitation*—an impermissible distortion.

87 L.Ed.2d 96 (1985) (emphasis in original, citations omitted):

> The six carefully integrated civil enforcement provisions found in § 502(a) [Section 1132(a)] of the statute as finally enacted, however, provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly. The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a "comprehensive and reticulated statute."

> \* \* \* \* \* \*

> We are reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA. As we stated in *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 19 [100 S.Ct. 242, 247, 62 L.Ed.2d 146] (1979): "[W]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." "The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement."

 Although HCC sets out seven counts launched against four targets, every one of those seven claims is grounded on contractual reimbursement provisions, and every one of them concludes by asking for $67,815.58 in compensatory damages. No matter what highway markers HCC has set up, then, its ultimate intended destination is always the same: a claim for money damages. It takes no advanced course in equity jurisprudence to recognize that such a suit for money damages is really the antithesis of equitable relief. See such cases as *First Nat'l Life Ins. Co. v. Sunshine–Jr. Food Stores, Inc.,* 960 F.2d 1546, 1553 (11th Cir.1992) (footnote omitted):

> We must reject FNL's argument that the phrase "equitable relief" in § 1132(a)(3) authorizes an award of compensatory damages. The omission of any mention of a right to legal remedies in § 1132(a)(3)

must be taken as an indication of Congress' intent to limit the relief available under this section to that which is equitable in nature.

Accordingly HCC—even apart from the dubiousness of its claim to ERISA "fiduciary" status—has not properly identified any ticket of admission to the federal courts. This action is dismissed for lack of subject matter jurisdiction.