John F. LONG; John F. Long Homes, Inc.; John F. Long Properties, Inc., Plaintiffs-Appellants,

v.

SALT RIVER VALLEY WATER USERS' ASSN., an Arizona corporation; Karl F. Abel; John R. Lassen; Marcel J. Boulais; William W. Arnett; Frederick J. Ash; Germain H. Ball; Bruce B. Brooks; John L. Burton, Jr.; Earnest C. Cheatham; Thomas P. Hurley; Alexander M. Conovaloff; Thomas Finley; Thomas Fitch; Stanford F. Hartman; J.S. Hoopes; Rudolph Johnson; Jay B. Neely; Otto B. Neely; Gilbert R. Rogers; William Rousseau; William P. Schrader; Leo C. Smith; John M. Williams, Jr.; Arizona Public Service Company, an Arizona corporation; So. Cal. Edison, a California corporation; Public Service Company of New Mexico, a New Mexico Corporation; El Paso Electric Company, a Texas corporation; Department of Water and Power, City of Los Angeles, a California corporation; Southern California Public Power Authority, a California Joint Power Agency; City of Phoenix; City of Glendale; City of Mesa; City of Scottsdale; City of Tempe; the Town of Youngstown, a municipal corporation; Salt River Project and Power District; Karl F. Abel, Defendants-Appellees.

No. 86–1510.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 12, 1986.

Decided June 15, 1987.

Williams S. Hawgood, II and Marcia Horn Yavitz, Phoenix, Ariz., for plaintiffs-appellants.

Donn G. Kessler, David L. White, Daniel J. McAuliffe, Robert B. Hoffman and William H. Anger, Phoenix, Ariz., for defendants-appellees.

Before CHAMBERS, POOLE and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Plaintiffs allege that an agreement providing for the sale of nonpotable treated sewage water (effluent) violates the Reclamation Act of 1902 (1902 Act), Pub.L. No. 57–161, 32 Stat. 388 (codified as amended in scattered sections of 43 U.S.C.), the Boulder Canyon Project Act (BCPA), 43 U.S.C. §§ 617–619b, and the Colorado River Basin Project Act (CRBPA), 43 U.S.C. §§ 1501–1556. We hold that these statutes do not confer a private right of action, and affirm the district court's dismissal of plaintiffs' claims arising under them.[1]

## BACKGROUND

The complaint alleges the following facts. Defendants Arizona Public Service Company (APS) and Salt River Project Agricultural Improvement and Power District (District) are participants in the Arizona Nuclear Power Project (Project). The Project is the builder and owner of the Palo Verde Nuclear Generating Station (Palo Verde Plant), located approximately fifty miles west of Phoenix. To ensure a steady supply of coolant for the Palo Verde Plant, APS and the District entered into an option contract (Agreement) with the defendant cities Phoenix, Glendale, Mesa, Scottsdale, Tempe and the town of Youngstown (Cities). The Agreement provided APS, the District, and future Project participants[2] with options until the year 2040 to purchase annually up to 140,000 acre-feet of effluent from the Cities' waste water treatment plants for use as coolant at the Palo Verde Plant.

Plaintiffs John F. Long, John F. Long Homes, Inc. and John F. Long Properties, Inc. (collectively "Long") are owners, investors, and developers of real estate in Maricopa County, Arizona. In the last thirty five years Long has constructed over 30,000 homes in Maricopa County. Long contends that the Agreement commits a substantial portion of the Cities' effluent to the Palo Verde Plant, making it unavailable to him for irrigation, construction, and dust control use and forcing him to pay a greater price to buy potable water for these uses.

Long brought the present claim under federal reclamation law seeking declaratory relief and an injunction against the signatories to the Agreement preventing them from committing the effluent for use at the Palo Verde Plant. Long asserts that the effluent was from federal reclamation projects (the Salt River Project and the Central Arizona Project [CAP]) and that the Agreement violates federal reclamation law because (1) the Palo Verde Plant's use of the effluent is not a beneficial use and (2) the Secretary of the Interior (Secretary) neither approved nor could have approved the new nonirrigation use of the effluent. Long also contends that the Agreement violates the CAP Master Contract between the Secretary and the Central Arizona Water Conservation District, which requires both parties' approval to pump ground water from the relevant service area.

---

1. We separately address and affirm in an unpublished memorandum disposition the dismissal of plaintiffs' claims under federal antitrust law, Arizona antitrust law, and the takings clause.

2. At the time of this suit the other alleged Project participants included defendants Southern California Edison Company, El Paso Electric Company, Public Service Company of New Mexico, and Southern California Public Power Authority.

The district court dismissed Long's claim. It held that no private right of action existed under federal reclamation law and that Long had therefore failed to state a claim upon which relief could be granted.

## STANDARD OF REVIEW

We review de novo a dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6). *Western Reserve Oil & Gas Co. v. New*, 765 F.2d 1428, 1430 (9th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 795, 88 L.Ed.2d 773 (1986). Dismissal is proper if it "appear[s] to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved." *Id.* All allegations in the complaint are taken as true and construed in favor of the non-moving party. *Id.* We likewise review de novo the district court's interpretation of the federal reclamation statutes. *See Trustees of Amalgamated Ins. Fund v. Geltman Indus.*, 784 F.2d 926, 929 (9th Cir.) (de novo review for statutory interpretation), *cert. denied,* — U.S. ——, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986).

## ANALYSIS

### I. The Reclamation Laws

Before addressing the private right of action question, we review the general framework of the reclamation laws at issue in this case. Congress enacted the 1902 Act to irrigate and reclaim arid lands in the western states. *See generally California v. United States*, 438 U.S. 645, 648–63, 98 S.Ct. 2985, 2987–95, 57 L.Ed.2d 1018 (1978) (describing background of 1902 Act). The 1902 Act establishes a fund from sales proceeds of public lands in the western states to construct and maintain irrigation works. 43 U.S.C. § 391. It authorizes the Secretary to develop irrigation projects, *id.* § 411, and assigns to the Secretary the duty of selling and distributing water from those projects, *see id.* §§ 373 (Secretary will implement provisions of act), 419 (Secretary may contract with landowners for

repayment of irrigation costs), 431 (Secretary may not sell right to use water in tract exceeding 160 acres). Section 8 of the 1902 Act provides the method for allocating project water:

> [N]othing in this Act shall be construed as affecting or intended to affect or to in any way interfere with the laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right acquired thereunder, and the Secretary of the Interior, in carrying out the provisions of this Act, shall proceed in conformity with such laws, and nothing herein shall in any way affect any right of any State or of the Federal Government or of any landowner, appropriator, or user of water in, to, or from any interstate stream or the waters thereof: *Provided,* That the right to the use of water acquired under the provisions of this Act shall be appurtenant to the land irrigated, and beneficial use shall be the basis, the measure, and the limit of the right.

1902 Act § 8, Pub.L. No. 57–161, 32 Stat. 390 (codified at 43 U.S.C. §§ 372, 383). Amendments to the 1902 Act authorize the Secretary to provide water rights to municipalities, 43 U.S.C. § 567, and permit the Secretary to enter into contracts to distribute surplus reclamation project water for nonirrigation purposes, provided (1) "no other practicable source of water supply for the purpose" exists, (2) the water-users' association whose members presently receive project water approve the contract, (3) such distribution will not adversely affect water service provided by the project, and (4) money obtained from the delivery will be credited to the project's reclamation fund, *id.* § 521.[3]

The Boulder Canyon Project Act supplements the 1902 Act, except to the extent the BCPA provides to the contrary. *Id.* §§ 617k, 617m. The BCPA authorizes the Secretary to dam the Colorado River for

---

**3.** *See also* 43 U.S.C. § 485h(c) (authorizing Secretary's entry into contracts to supply "water for municipal water supply or miscellaneous purposes," subject to various conditions, including

the nonimpairment of irrigation). Section 485h(c) is inapplicable to the BCPA, 43 U.S.C. § 485j note, and of limited applicability to the CRBPA, *id.* § 1524(b)(3).

flood control and reclamation purposes, *id.* § 617, and to enter into contracts to distribute its water to users in Arizona, California, and Nevada, *id.* § 617d. Allocation of aggregate amounts to be received by the three states is set by formula. *Id.* § 617c(a); *see also Arizona v. California,* 373 U.S. 546, 564–65, 83 S.Ct. 1468, 1479–80, 10 L.Ed.2d 542 (1963). The Secretary's distribution of project water to individual users within a state is constrained by the BCPA's requirements to, among other things, provide water only through permanent service contracts and satisfy present perfected rights, *Arizona v. California,* 373 U.S. at 584, 83 S.Ct. at 1489, and presumably by the 1902 Act's beneficial use and appurtenance requirements.[4]

The Colorado River Basin Project Act, like the BCPA, supplements the 1902 Act. 43 U.S.C. § 1554 (except as otherwise provided, Secretary shall be governed by 1902 Act). It provides, among other things, for regulation of flow of the Colorado River and for an adequate water supply for the Colorado River Basin. *Id.* § 1501(a). The Secretary is directed to construct the Central Arizona Project, *id.* § 1521, from which the Secretary may, pursuant to contract, *id.* § 1524(b)(1), supply water for industrial use, *see id.* § 1524(b)(2), (3). All contracts for CAP water must contain a clause prohibiting the Secretary and the contracting party from pumping ground water to areas outside the contracting party's service area absent an agreement by both parties that surplus ground water exists and that drainage is required. *Id.* § 1524(c).

## II. Implied Rights of Action under the Reclamation Laws

The reclamation statutes do not expressly provide or deny potential recipients of project water a right of action against fellow recipients. We therefore analyze the statutes to determine whether they impliedly provide such a right of action.[5]

■ The Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26

---

**4.** Neither section 8 of the 1902 Act nor the BCPA's general statement of intent not to interfere with the states' rights to regulate water use within their borders, 43 U.S.C. § 617q, requires the Secretary to follow state law in allocating water among users within a particular state. *Arizona v. California,* 373 U.S. at 585–86, 83 S.Ct. at 1490. The Supreme Court in *California v. United States,* 438 U.S. at 674–75, 98 S.Ct. at 3000–01, disavowed dictum in *Arizona v. California,* 373 U.S. at 586–87, 83 S.Ct. at 1490–91, that 1902 Act § 8 did not require the Secretary to comply with state law in distributing project water, even when that state law was not inconsistent with specific federal statutory requirements. However, the *California v. United States* decision "did not question the description of the Secretary's power under the [BCPA] itself." *Bryant v. Yellen,* 447 U.S. 352, 370 n. 21, 100 S.Ct. 2232, 2242 n. 21, 65 L.Ed.2d 184 (1980).

**5.** The Participants cite *Turner v. Kings River Conservation District,* 360 F.2d 184 (9th Cir. 1966), as controlling the private right of action issue. In *Turner,* landowners sued the Secretary to enjoin his supply of water to tracts larger than 160 acres, as proscribed by 43 U.S.C. §§ 423e and 431. This court rejected the landowners' claim, finding "nothing in the [1902 Act as amended] to indicate that Congress intended to confer a litigable right upon private persons claiming injury from the Secretary's failure to discharge his duty to the public." 360 F.2d at 198.

This quoted language from *Turner* may be overly broad if taken to mean that an injured party has no recourse against a failure of the Secretary to discharge a clear duty under reclamation law. *See Arizona v. California,* 373 U.S. at 584–85, 83 S.Ct. at 1489–90; *Ickes v. Fox,* 300 U.S. 82, 57 S.Ct. 412, 81 L.Ed. 525 (1937) (both decisions approving of judicial review of the Secretary's actions under reclamation law); *South Delta Water Agency v. United States,* 767 F.2d 531, 540 (9th Cir.1985) (subsequent amendments to the Administrative Procedure Act (APA), 5 U.S.C. § 702, require increased judicial review of agency actions). However, to say that Long may have a right of action under the APA to compel the Secretary's compliance with reclamation law does not mean that reclamation law provides a right of action against parties other than the Secretary. *See Legal Aid Soc'y v. Brennan,* 608 F.2d 1319, 1332 (9th Cir.1979) (distinguishing private right of action against employers under executive order mandating affirmative action from an action under the APA to compel the Secretary of Labor's enforcement of the executive order), *cert. denied sub nom. Chamber of Commerce of the United States v. Legal Aid Soc'y,* 447 U.S. 921, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980). Nor do the claims at issue here arise under the APA. Although the Secretary and the United States Nuclear Regulatory Commission were originally named as defendants, all claims against them were dismissed pursuant to stipulation prior to the district court's ruling on the private right of action issue.

(1975), identified four factors relevant "[i]n determining whether a private remedy is implicit in a statute not expressly providing one":

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

422 U.S. at 78, 95 S.Ct. at 2088 (citations omitted). Two of the four *Cort* factors may arguably support a private right of action. Long, as a home developer alleging a need for water for irrigation purposes, could perhaps be viewed as a member of the class that the reclamation laws were intended to benefit. *See Ivanhoe Irrigation Dist. v. McCracken,* 357 U.S. 275, 292, 78 S.Ct. 1174, 1184, 2 L.Ed.2d 1313 (1958) (policy underlying 1902 Act is to make the benefits of reclamation "available to the largest number of people, consistent, of course, with the public good"); 35 Cong. Rec. 6673 (1902) (purpose of 1902 Act is to make water available to settlers) (statement of Rep. Newlands); *id.* at 6769 (1902 Act is a "home-building" bill) (statement of Sen. Cowherd). Also, resolution of disputes over rights to water from federal projects arguably has not been relegated to state law. *See Arizona v. California,* 373 U.S. at 582 n. 84, 83 S.Ct. at 1489 n. 84 (discounting remark of Senator Hayden, 70 Cong.Rec. 169 (1928), that state courts determine priority of distribution of Boulder Canyon Project water).

However, even if these two *Cort* factors were satisfied, the courts are not free to create a private right of action when neither legislative history nor the statutory scheme creates an inference that Congress intended to confer a private remedy. *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 145, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985). The legislative history of the 1902 Act, the BCPA, and the CRBPA provides no indication of congressional intent to confer a private right of action. Indeed, the CRBPA specifically provides any affected state a right of action in the Supreme Court to redress the Secretary's failure to comply with its provisions. 43 U.S.C. § 1551(c). Congress' creation of a particular remedy and omission of another suggests its intent not to provide that other remedy. *Universities Research Ass'n v. Coutu,* 450 U.S. 754, 773, 101 S.Ct. 1451, 1462, 67 L.Ed.2d 662 (1981).

We also cannot infer congressional intent to create a private right of action from the structure of the reclamation statutes. All impose on the Secretary the duty to distribute water according to their terms. We do not read Congress' mandate to the Secretary to ensure the correct distribution of project water as implying an action in a potential recipient against fellow recipients. Moreover, private suits against parties other than the Secretary to enforce project water rights could very well undermine the discretion the Secretary enjoys in distributing water under the reclamation statutes. *See, e.g., Arizona v. California,* 373 U.S. at 582-85, 83 S.Ct. at 1488-90 (noting Secretary's discretion, subject to judicial review, to distribute project water under the BCPA). This cautions against finding congressional intent to provide a private remedy. *See Securities Investor Protection Corp. v. Barbour,* 421 U.S. 412, 421-22, 95 S.Ct. 1733, 1739, 44 L.Ed.2d 263 (1975) (inference of congressional intent to create private remedy under statute is undermined by potential of private enforcement conflicting with administrative enforcement).

Because we can infer no congressional intent to create a private remedy, we find no implicit private right of action under the reclamation statutes. We also reject Long's standing to enforce the CAP Master Contract, which the Secretary entered into pursuant to the CRBPA, 43 U.S.C. § 1524(b). Long is not a party to the contract, *see EEOC v. Goodyear Aerospace Corp.,* 813 F.2d 1539, 1543 n. 2 (9th

Cir.1987) (plaintiff who is not party to a contract generally lacks standing to enforce its terms), and he provides no theory supporting his right to enforce its terms against private parties other than the right of private parties to enforce the CRBPA. That argument we have rejected above.

## CONCLUSION

The 1902 Act, the BCPA, and the CRBPA do not provide private parties with a right of action against other private parties to redress alleged violations of their provisions. The district court's dismissal of Long's claim under these reclamation statutes is AFFIRMED.