PHYSICIANS HEALTHCHOICE, INC., as assignee of the rights of certain members of the Automotive Employee Benefit Trust, Plaintiff–Appellant,

v.

The TRUSTEES OF the AUTOMOTIVE EMPLOYEE BENEFIT TRUST, including Alfred S. Brodie, Joseph Garbina, Gerald R. Kottschade, Florence Markert, and other presently unidentified "John Doe" individuals, Defendants–Appellees.

No. 92–1699.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 14, 1992.

Decided March 10, 1993.

**54**

Keith J. Halleland, Minneapolis, MN, argued, for plaintiff-appellant.

Robert T. Torgerson and Gaylord W. Swelbar, Duluth, MN, argued, for defendants-appellees.

Before BOWMAN, Circuit Judge, LAY, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

In this case, Physicians HealthChoice, Inc. ("PHC"), a creditor of a defunct multi-employer welfare trust, seeks to collect a $1,600,000 debt of the trust by suing the trustees for mismanaging the trust in violation of their fiduciary duties under ERISA. The district court[1] granted summary judgment in favor of the trustees on the ground that PHC had failed to show actionable "losses to the plan" under 29 U.S.C. § 1109(a). 784 F.Supp. 1416. We affirm.

Under a 1987 agreement between PHC and the Automotive Employee Benefit Trust (the "Trust"), PHC's network of independent health care providers offered specified health care services to the employees of employer members of the Trust, PHC paid the providers at discounted rates for services provided, and the Trust reimbursed PHC for its payments to the provid-ers and paid PHC a five per cent fee for its services. By mid–1989, the Trust was in substantial arrears to PHC and was not collecting sufficient premiums (contributions from members and beneficiaries) to meet its obligations under the PHC agreement. However, PHC was reluctant to terminate a relationship that had generated substantial fees, and in November 1989 the parties entered into a supplemental contract establishing a plan under which the Trust would repay its past-due debt.

By March 1990, the Trust's debt to PHC had grown to over $1,000,000, and the Trust had failed to solve its financial problems. On March 23, 1990, the parties entered into a new agreement: the Trust acknowledged its debt to PHC, assigned virtually all its assets to PHC, and promised to terminate its health benefit plan effective March 31, 1990. In return, PHC agreed to offer fully insured health care coverage to Trust members located within PHC's service area. PHC then entered into new health care agreements with employer members of the Trust, obtaining written assignments from members and some beneficiaries of "all claims, rights or causes of action" each might have against the Trust *and its trustees.*

The Trust was dissolved in September 1990, leaving an unpaid debt to PHC of $1,600,000. PHC then commenced this action against the individual trustees, alleging that their mismanagement of the Trust was a breach of their ERISA fiduciary duties that resulted in the Trust's inability to pay its debt to PHC.

PHC asserts that the trustees are liable in damages under § 1109(a), which provides in relevant part:

> (a) Any ... fiduciary with respect to a plan who breaches any of the ... duties imposed upon fiduciaries by this subchapter shall be personally liable *to make good to such plan any losses to the plan resulting from each such breach,* and to restore to such plan any profits of such fiduciary which have been

---

**1.** The HONORABLE HARRY H. MacLAUGHLIN, United States District Judge for the District of Minnesota.

made through use of the assets of the plan by the fiduciary. . . .

(Emphasis added.) The Supreme Court has construed the italicized language literally: "the entire text of § [1109] persuades us that Congress did not intend that section to authorize any relief except for the plan itself." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144, 105 S.Ct. 3085, 3091, 87 L.Ed.2d 96 (1985).

ERISA expressly provides that a civil action may be brought "by a participant, beneficiary or fiduciary for appropriate relief under section 1109." 29 U.S.C. § 1132(a)(2). Thus, to prevail in this § 1109 action, PHC must prove (i) that the assignments it received from Trust members and beneficiaries enable PHC, a creditor of the Trust, to bring a § 1132(a)(2) action as though it was a participant or beneficiary of the Trust; (ii) that the trustees breached one or more ERISA fiduciary duties; and (iii) that there were "losses to the plan resulting from" such a breach. Though the trustees vigorously contest each of these issues, the district court granted summary judgment on the sole ground that PHC failed to show an actionable loss to the plan. Accordingly, that is the only issue before us.

The only "loss to the plan" alleged by PHC is the Trust's inability to pay PHC for medical services provided to Trust beneficiaries. It is significant, though not dispositive, that this alleged loss is not of a type obviously intended to be actionable under § 1109. There was no alleged self dealing by the trustees here and therefore no "profits ... made through use of assets of the plan" to be restored, a remedy specifically included in § 1109(a). Likewise, the alleged loss did not arise from imprudent investment or manipulation of Trust funds, an obvious concern of Congress in enacting § 1109. *See Russell*, 473 U.S. at 140 n. 8, 105 S.Ct. at 3089 n. 8. Rather, PHC alleg-

es that, because of trustee mismanagement, the Trust generated insufficient revenues (contributions from members) to meet its expenses (contractual payments to PHC) and ultimately became insolvent. Although fiduciary mismanagement of all types is of potential concern under ERISA, the fact that mismanagement losses of the sort alleged by PHC are not obviously within the purview of § 1109 suggests the need to look more closely at whether the alleged loss is an actionable "loss to the plan," or is merely a loss to creditors of the plan that is outside the scope of § 1109.

In this regard, we agree with the district court that PHC has failed to identify a tangible loss to the Trust. The Trust's members and beneficiaries received all the medical services to which they were entitled during the period in question. The Trust received the full benefit of its bargain with PHC. Thus, the persons and entities for whose benefit this ERISA remedy was enacted—the Trust and its participants and beneficiaries—need no remedy. The Trust's failure to pay its debt to PHC is, at most, a peripheral ERISA concern and does not fall within the plain meaning of the term "losses to the plan." Under the federal tax laws, for example, it is only PHC, and not the Trust, that has incurred a loss. *See* 26 U.S.C. §§ 165–66.

PHC responds that "losses to the plan" should include conduct that frustrates the interest of participants and beneficiaries in the continuing vitality of a plan. We agree that this is a valid ERISA concern. However, this action does not seek relief that will further that interest. PHC seeks to compel the trustees to pay $1.6 million into the Trust so that PHC can then enforce its contractual right to be paid. Such a remedy will not revive the Trust and will provide little if any benefit to Trust members and beneficiaries.[2] In other words, although PHC purports to seek relief for the

**2.** The parties vigorously debate whether PHC may recover the Trust's unpaid debt from either the Trust's employer members or the employees who received the medical services. The district court noted that PHC has asserted no such claims and its right to do so under the operative agreements is problematic. In any event, in this suit PHC has not asserted, and could not assert, the rights of Trust participants and beneficiaries to recover individually from the trustees. As the concurring opinion in *Russell* makes clear, those rights are not at issue in a § 1109 action. 473 U.S. at 148–150, 105 S.Ct. at 3093–3094.

Trust on behalf of participants and beneficiaries, the suit is nothing more than an attempt to use § 1109 to enhance PHC's state law rights as a creditor of the Trust.

For these reasons, we agree with the district court's decision to dismiss PHC's § 1109 claim. PHC has failed to identify a concrete loss to the Trust, and the remedy PHC seeks would further no cognizable ERISA interest of the Trust or its participants and beneficiaries. Although we would not hesitate to construe "losses to the plan" in § 1109 broadly in order to further the remedial purposes of ERISA, we find no suggestion that Congress intended to provide third-party creditors with a new federal weapon to pierce a plan's organizational veil solely for their own benefit. This case, at bottom, involves nothing more.

The judgment of the district court is affirmed.