United States Court of Appeals,

Fifth Circuit.

No. 93-7362.

Nathan and Sharyl McDONALD, Individually and as Next Friend and Guardians of Nathan Neil McDonald, a Minor, and J.N. McDonald, Jr., Individually and d/b/a McDonald Equipment, Plaintiffs-Appellants,

v.

PROVIDENT INDEMNITY LIFE INSURANCE COMPANY, et al., Defendants-Appellees.

Aug. 9, 1995.

Appeal from the United States District Court For the Southern District of Texas.

Before POLITZ, Chief Judge, EMILIO M. GARZA and STEWART, Circuit Judges.

POLITZ, Chief Judge:

McDonald Equipment Company and employee-beneficiaries of its health insurance plan appeal an adverse summary judgment in their action complaining of excessive—and unaffordable—premium increases. We affirm.

*Background*

In 1986, McDonald Equipment, a sole proprietorship owned by J.N. McDonald, Jr., subscribed to the Business Insurance Trust to obtain group health insurance for its employees and their dependents. The BIT, a multiple employer trust, was organized by Arden O. French, Jr., who served as trustee and also owned Insurance Resources Management Corporation, the third party administrator of the group health plan. When McDonald subscribed in 1986, the BIT plan was underwritten by a policy issued by Northern Carolina Mutual. In 1988 North Carolina Mutual ceased

providing health insurance and French selected Provident Indemnity Life Insurance Company as the replacement insurer. IRM continued as administrator until taken over by Provident in November 1989. French then resigned as trustee and the trusteeship was transferred first to three Provident employees and then to TrustMark Bank.

Nathan McDonald, the son of J.N. McDonald Jr., managed the McDonald business. In September 1989, Nathan's son Neil suffered a tragic, near-fatal swimming accident, resulting in a permanent spastic quadriplegic condition. Provident paid $360,000 in medical claims and raised McDonald Equipment's premium by 50 percent in April 1990 (McDonald changed its deductible from $100 to $500 to avoid a 150 percent increase), by 100 percent in November 1990, and by still another 100 percent in April 1991. As a result, McDonald's initial monthly premiums of $2000 were increased to $15,208. The company could not afford continued coverage and the policy lapsed.

The McDonalds and McDonald Equipment brought suit against Provident, the BIT and French, asserting various state law claims and alternatively invoking the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. Granting the defendants' motion for partial summary judgment, the district court found that McDonald's health coverage constituted an ERISA plan and preempted the state law claims. Following a bench trial on the remaining issues, the district court rendered judgment in favor of the defendants. This appeal timely followed.

*Analysis*

2

1. Was there an ERISA plan?

In reviewing the grant of summary judgment, we may affirm only if there is no dispute of material fact, and the movant is entitled to judgment as a matter of law.[1] The existence vel non of an ERISA plan is a question of fact.[2] Therefore, our initial inquiry focuses on whether the summary judgment evidence would have allowed a reasonable trier-of-fact to find that an ERISA plan did not exist.

ERISA defines an employee welfare benefit plan in pertinent part as:

> any plan, fund, or program which was ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise ... medical, surgical, or hospital care or benefits....[3]

Relying on *MDPhysicians & Associates, Inc. v. State Board of Insurance*,[4] the McDonalds contend that the BIT was not such a plan. The BIT was established by French in association with an insurance company as an entrepreneurial venture, not by employers seeking to provide employee benefits and, further, it had no relationship with

---

[1] Fed.R.Civ.P. 56(c).

[2] *Gahn v. Allstate Life Ins. Co.,* 926 F.2d 1449 (5th Cir.1991).

[3] 29 U.S.C. § 1002(1).

[4] 957 F.2d 178 (5th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 179, 121 L.Ed.2d 125 (1992).

the employee-participants apart from the provision of benefits.[5] The BIT's status, however, is not dispositive. In determining whether an ERISA plan exists, we must focus on the employer and its involvement with the plan. The dispositive issue is whether McDonald Equipment's *subscription* to the BIT constituted an ERISA plan.[6]

That inquiry is tripartite. First we apply the safe-harbor provisions established by Department of Labor regulations to determine whether the program was exempt from ERISA. Because McDonald Equipment paid the insurance premiums, it was not.[7] Next we look to see if there was a "plan" by inquiring whether "from the surrounding circumstances a reasonable person [could] ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits."[8] Under this standard a plan clearly existed. The benefits provided by the McDonald plan were described in the Provident policy; the beneficiaries were the McDonald employees and their dependents; McDonald Equipment paid the entire premiums for coverage of its employees and a portion of the premiums for coverage of the

---

[5]*Id.; see also Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir.1982) (en banc).

[6]*Gahn; Meredith v. Time Ins. Co.,* 980 F.2d 352 (5th Cir.1993); *Memorial Hospital System v. Northbrook Life Ins. Co.,* 904 F.2d 236 (5th Cir.1990). Unlike the case at bar, the status of the multiple employer trust was dispositive in *MDPhysicians* because the issue was whether the state could regulate the MET.

[7]29 C.F.R. § 2510.3-1(j).

[8]*Memorial Hospital,* 904 F.2d at 240 (quoting *Dillingham,* 688 F.2d at 1373).

4

dependents; and the procedures for recovering benefits were explained in the policy manual. Finally, we ask whether the employer "established or maintained" the plan for the purpose of providing benefits to its employees. McDonald Equipment did so, purchasing the insurance, selecting the benefits, identifying the employee-participants, and distributing enrollment and claim forms.[9] A reasonable fact-finder could have reached but one conclusion: McDonald's subscription to the BIT constituted an ERISA plan.

2. Standard of Review.

The McDonalds first contend that the district court erred in applying the arbitrary and capricious standard of review rather than a de novo standard in reviewing French's actions as a fiduciary. In *Firestone Tire & Rubber Company v. Bruch,*[10] the Supreme Court recognized that when a fiduciary is granted discretion in the performance of a duty the review is for an abuse of discretion. In the instant action the trust agreement creating the BIT gave French the absolute discretion to contract with an insurance provider. French acted under this authority in selecting PILIC and the district court correctly reviewed the decision under the arbitrary and capricious standard which is the equivalent of the abuse of discretion standard in this circuit.[11]

---

[9]*Cf. Memorial Hospital.*

[10]489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

[11]*Penn v. Howe-Baker Engineers, Inc.,* 898 F.2d 1096 (5th Cir.1990) (equating arbitrary and capricious standard with abuse of discretion standard in ERISA context).

3. Did French breach his fiduciary duties in selecting PILIC?

At the outset, we note that as trustee of the BIT and principal of IRM, the third-party administrator, French was a fiduciary of the McDonald plan.[12] The plaintiffs contend that French breached his fiduciary duty by not disclosing Provident's schedule for the re-rating of premiums, by selecting PILIC to underwrite the BIT policy, and by benefitting personally from the increased level of premiums. We review these claims under a three step analysis. To establish a claimed breach of fiduciary duty, an ERISA plaintiff must prove a breach of a fiduciary duty and a prima facie case of loss to the plan.[13] "Once the plaintiff has satisfied these burdens, "the burden of persuasion shifts to the fiduciary to prove that the loss was not caused by ... the breach of duty.' "[14]

In ruling on the McDonalds' nondisclosure claim, the district court held that French breached his fiduciary duty by failing to disclose PILIC's re-rating schedule for its group health coverage premiums to McDonald Equipment. We perceive no error in this holding. Section 404(a) imposes on a fiduciary the duty of undivided loyalty to plan participants and beneficiaries, as well as a duty to exercise care, skill, prudence and diligence.[15] An obvious component of those responsibilities is the duty to disclose

---

[12]*Donovan v. Mercer,* 747 F.2d 304 (5th Cir.1984).

[13]*Roth v. Sawyer-Cleator Lumber Co.,* 16 F.3d 915, 917 (8th Cir.1994).

[14]*Id.* at 917.

[15]29 U.S.C. § 1104.

6

material information.

Shortly after the effective date of the plan, PILIC advised French of a new rate schedule which French later conceded would have resulted in prohibitive premiums for any small employer experiencing a single catastrophic claim. French, however, failed to inform either McDonald Equipment or its employee-beneficiaries of the schedule, at least in part due to marketing considerations. Considering the impact that this rate schedule would have had on McDonald Equipment or any other small employer, this information was material to PILIC's suitability as a replacement insurer and McDonald's decision to remain in the BIT. Accordingly, French had an obligation to disclose.

The nondisclosure claim falters, however, at the second step of our analysis, specifically, the plaintiffs failed to prove a loss *to the plan* as required by 29 U.S.C. 1109(a).[16] In *Massachusetts Mut. Life Ins. Co. v. Russell,*[17] the Supreme Court interpreted the "loss to the plan" language in § 1109 to limit claims under this section to those which inure to the benefit of the plan as a whole rather than to individual beneficiaries. The court noted that this interpretation reflected ERISA's primary concern with the possible misuse or mismanagement of plan assets.[18]

A close examination of the McDonalds's claim does not disclose

[16]The plaintiffs assert that the defendants are liable under § 409 of ERISA, codified at 29 U.S.C. § 1109.

[17]473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985).

[18]*Id.* at 140-42 & n. 8, 9, 105 S.Ct. at 3089-90 & n. 8, 9, 87 L.Ed.2d at 102-03 & n. 8, 9 (discussing legislative history).

7

how it involved the requisite "loss to the plan" as described in *Russell.* The resulting harm of the breach of French's fiduciary duties was the payment of higher premiums which ultimately lead to the decision, albeit under economic duress, to discontinue insurance coverage with the BIT. The relief sought is the balance of the benefits due for the treatment of Neil McDonald. This relief, unfortunately in this legal analysis, inures to the benefit of the McDonalds, not the plan, and thus has no impact on plan assets. Were we to consider the prohibitive increases in premiums as the injury or loss, these increases actually made the plan itself healthier and more likely to survive the catastrophic claims of other beneficiaries, including other McDonald Equipment employees.[19] We must therefore conclude that the McDonalds failed to establish a loss to the plan.[20] Further, because the showing of a loss to the plan is required for any breach of fiduciary duty claim under § 1109, the McDonalds' other breach claims also fail.

4. Other claims.

The remaining claims have no merit. The state law civil conspiracy and fraud claims are preempted by ERISA.[21] The district

---

[19]The plaintiffs also failed to provide any evidence that coverage was available from other companies under better terms.

[20]*See Total Plan Services v. Texas Retailers Assoc.,* 932 F.2d 357 (5th Cir.1991) (dismissing claim for failure to allege a loss to the plan); *Physicians HealthChoice, Inc. v. Trustees of Automotive Employee Benefit Trust,* 988 F.2d 53 (8th Cir.1993).

[21]*See Christopher v. Mobil Oil Corp.,* 950 F.2d 1209 (5th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992).

court did not err in denying a jury trial on the ERISA claims.[22]
Finally, we find no abuse of discretion in the district court's
termination of discovery.[23]

AFFIRMED.

---

[22]*Borst v. Chevron Corp.,* 36 F.3d 1308 (5th Cir.1994);
*Calamia v. Spivey,* 632 F.2d 1235 (5th Cir.1980).

[23]*See Wichita Falls Office Assoc. v. Banc One Corp.,* 978
F.2d 915 (5th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct.
2340, 124 L.Ed.2d 251 (1993) (according great deference to
judge's decision to curtail discovery).