Peggy J. BEASTON, Plaintiff,

v.

The SUNDT COMPANIES; Carol W. Peabody; and The Sundt Companies Esop Committee, Defendants.

No. CV 09–551–TUC–AWT.

United States District Court, D. Arizona.

Aug. 15, 2011.

Bruce R. Heurlin, Eric James McNeilus, Sr., Kevin Michael Sherlock, Heurlin Sherlock Panahi, Tucson, AZ, for Plaintiff.

David M. Bell, David Bell & Associates PLLC, Phoenix, AZ, Dennis G. Rolstad, Sedgwick Detert Moran & Arnold LLP, San Francisco, CA, for Defendants.

## MEMORANDUM ORDER

A. WALLACE TASHIMA, Circuit Judge.

Peggy J. Beaston ("Plaintiff") brings this action against The Sundt Companies ("Sundt"), Carol W. Peabody, a member of the Sundt ESOP Advisory Committee ("Peabody"), and the Sundt Companies ESOP Committee (the "Committee"). (The defendants, collectively, are hereinafter referred to as "Defendants.") Plaintiff alleges discrimination, breach of fiduciary and cofiduciary duty, fraud, and misrepresentation by Defendants, giving rise to a cause of action under the Employee Retirement Income Security Act of 1974 ("ERISA"). Pending before the court is Defendants' Motion for Summary Judgment (Doc. 30), which has been fully briefed. On the basis of that briefing and a review of the summary judgment record, the court has determined that oral argument on the motion will not be helpful. The motion, therefore, is now submitted for decision and, for the reasons stated below, the court GRANTS Defendants' Motion.

## BACKGROUND

Plaintiff is a former Sundt employee. (Doc. 32, at 2–4.) During her employment, she participated in an Employee Stock Ownership Plan sponsored by Sundt (the "ESOP"). The ESOP is an employee stock ownership plan as defined by ERISA, § 407(d)(6), 29 U.S.C. § 1107(d)(6). Its plan year (the "Plan

Year") runs from October 1 through September 30. (*Id.*, at 2.)

In 2006, Plaintiff was considering participating in a reduction-in-force program (the "RIF") at Sundt. At that time, she anticipated that the value of Sundt stock, in which her ESOP account was invested, would rise. She was concerned about missing out on any such increase in value, and she discussed the matter with Peabody prior to and during the month of September 2006. Plaintiff advised Peabody that she wanted her retirement plan assets to remain invested in Sundt stock after her retirement. Peabody informed Plaintiff that historically it was taking approximately two years for the ESOP to convert former employees' assets out of Sundt stock and into other investments and advised Plaintiff that her assets would remain in Sundt stock for approximately two years after her employment terminated. (*Id.*, at 2–3.) Plaintiff decided to participate in the RIF, and her employment at Sundt ended on September 23, 2006. (*Id.*, at 4.)

In 2006, at the time of Plaintiff's conversation with Peabody, the ESOP governing documents provided that the ESOP "Committee may determine (based upon a non-discriminatory policy) that the Accounts of former Employees will be diversified and invested in Trust Assets other than Sundt Stock." (Doc. 31–1, at 27–28.) At that time, Sundt's actual practice was to move former employees' assets out of Sundt stock and into other assets as soon as it had enough cash to do so after their employment ended. As of 2006, as Peabody stated, that process historically had taken up to two years. (Doc. 32, at 3.) In 2005, 2006, and January 2007, Sundt sent a notice to ESOP participants informing them that, after they separated from service with Sundt, the value of their account balance would be converted out of Sundt stock and into alternative investments as

soon as sufficient cash was available within the ESOP trust. (Doc. 31–2, at 5–6, 7–8, 9.)

However, at a meeting of the Committee on February 5, 2007, the Committee discussed for the first time the possibility of amending the ESOP terms regarding when former employees' ESOP account balances would be moved out of Sundt stock. (Doc. 32, at 4; Doc. 31–2, at 13.) Then, at a Committee meeting held on May 21, 2007, the Committee agreed to change the ESOP terms to provide that all terminated employees' Sundt stock would be converted to cash in the Plan Year following the Plan Year in which an employee terminated his or her employment, and that the conversion would be based on the fair market value of Sundt stock at the end of the Plan Year in which the employee's employment with Sundt ended (in other words, on the September 30th following the employee's termination of employment). (Doc. 32, at 5–6; Doc. 31–2, at 46.) This decision was informed by the Committee's review of certain repurchase liability studies, which are not in the record before the court. (Doc. 32, at 5.) In May 2007, the ESOP documents were amended to reflect this change. The Committee applied this change retroactively, with the result that "all *former* employees' accounts would be effectively segregated and valued on the first day of the ESOP year following the year in which their employment ended." (Doc. 32, at 6 (emphasis added).)

In September of 2007, Sundt sent Plaintiff a notice informing her that her ESOP account would "remain invested in Sundt stock [only] through the September 30th (plan year) after [her] termination of employment with Sundt." (Doc. 31–4, at 2; *see* Doc. 32, at 6.) In January of 2008, Plaintiff emailed Peabody expressing surprise that her recent ESOP statement reflected that her shares had been converted

to cash at the September 30, 2006 share price. Plaintiff's email indicated that she had believed that her account would remain in Sundt stock through September 30, 2007. (Doc. 31–4, at 5.) The value of one share of Sundt stock on September 30, 2006 was $52.96. The value as of September 30, 2007 was $80.33. (Doc. 38, at 2.)

On June 13, 2008, Plaintiff's counsel sent a letter to Sundt contesting the decision to convert her Sundt stock as of September 30, 2006, and demanding payment of $149,064.88 (the additional amount Plaintiff alleged she would have gained had her account remained in Sundt stock until September 30, 2007), plus interest. Plaintiff's counsel sent a second letter, on October 15, 2008, reiterating Plaintiff's position. On October 28, 2008, the Committee sent Plaintiff's counsel a letter asserting that her interest in the ESOP was calculated correctly and denying her claim for an adjustment to her interest. (Doc. 32, at 7.) Plaintiff submitted an appeal of this determination to the Committee on December 24, 2008; this appeal was denied on February 18, 2009. (*Id.* at 7–8.)

Plaintiff commenced this action on September 29, 2009, and, on October 26, 2009, filed an Amended Complaint (hereinafter, the "Complaint"). (Docs. 1, 3.) Plaintiff seeks, *inter alia,* equitable relief pursuant to 29 U.S.C. § 1132(a)(3) and damages under ERISA. (Doc. 3, at 18.) Defendants filed a Motion to Dismiss certain state law claims contained in the Complaint on January 15, 2010, and Plaintiff voluntarily dismissed those claims on February 1, 2010. (Docs. 10, 16.) Defendants filed the present Motion for Summary Judgment on February 24, 2011. (Doc. 30.)

## DISCUSSION

### A. Legal Standard for Summary Judgment

The court may grant summary judgment when the pleadings and evidence show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). To establish a genuine dispute as to any material fact, the non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *In re Oracle Corp. Sec. Litig.,* 627 F.3d 376, 387 (9th Cir.2010). In determining whether the non-moving party has met this burden, the court must draw "all justifiable inferences" in the non-moving party's favor. *Id.*

Plaintiff has not challenged Defendants' Separate Statement of Facts in Support of Motion for Summary Judgment (Doc. 32) and has not argued that there is any genuine dispute as to any material fact. (Doc. 37, at 4–5.) Therefore, the only question the court must decide is whether Defendants are entitled to judgment as a matter of law, based on the facts as set forth above.

### B. Analysis

#### 1. Statutory Basis for Plaintiff's Claim

As an initial matter, the parties dispute the sections of ERISA under which Plaintiff may bring a claim.

##### a) § 502(a)(1)(B)

Defendants argue that Plaintiff's claim should be brought as a claim for additional benefits under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), but that Plaintiff cannot prevail on a claim under that section. (Doc. 30, at 13–17.) Plaintiff in turn argues that she *can* prevail on a claim under that section. (Doc. 37, at 6–8.) In their Reply in Support of Their Motion for Summary Judgment, Defendants argue for the first time that Plaintiff waived the right to bring a claim under that section because she did not specifically mention it

as a basis for relief in the Complaint. (Doc. 39, at 12–13.)

■ Section 502(a)(1)(B) provides a cause of action for a participant or beneficiary of an ERISA plan "to recover benefits due to him under the terms of his plan, [or] to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). While it is true that Plaintiff did not specifically cite this section in the Complaint, the Complaint does state that Plaintiff "seeks all remedies available under ERISA." (Doc. 3, at 2.) Moreover, Defendants had fair notice of a potential claim under this section, as evidenced by the fact that they specifically argued in their Motion for Summary Judgment that Plaintiff cannot prevail on a claim under § 502(a)(1)(B). *See Katie A., ex rel. Ludin v. L.A. Cnty.*, 481 F.3d 1150, 1162 (9th Cir.2007). It is not necessary for a complaint to identify every particular legal theory under which recovery could be granted. *Crull v. GEM Ins. Co.*, 58 F.3d 1386, 1391 (9th Cir.1995). Therefore, the court will consider Plaintiff's claim under § 502(a)(1)(B) on the merits.

### b) § 502(a)(2)

■ ERISA § 502(a)(2) permits a plan participant or beneficiary to bring a civil action for appropriate relief when "[a]ny person who is a fiduciary with respect to a plan ... breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries" by ERISA. 29 U.S.C. §§ 1109(a), 1132(a)(2). A plaintiff in such an action may demand that the fiduciary in breach "make good to such plan any losses to the plan resulting from each such breach" and may also demand "such other equitable or remedial relief as the court may deem appropriate." 29 U.S.C. § 1109(a).

The Complaint does specifically assert a claim under § 502(a)(2). (Doc. 3, at 9.) Defendants argue, however, that Plaintiff

may not bring a claim under this section because she is making a claim only on behalf of herself as an individual participant and not on behalf of the ESOP as a whole. (Doc. 30, at 17.)

Defendants are correct that the Supreme Court held in *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), that § 502(a)(2) provides only "remedies that would protect the entire plan, rather than [merely] the rights of an individual beneficiary." *Id.* at 142, 105 S.Ct. 3085. However, the Supreme Court recently narrowed the scope of its holding in *Russell*, stating that "*Russell's* emphasis on protecting the 'entire plan' from fiduciary misconduct reflects the former landscape of employee benefit plans." *LaRue v. De-Wolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 254, 128 S.Ct. 1020, 169 L.Ed.2d 847 (2008). The plan at issue in *Russell* was a traditional defined benefit plan, whereas *LaRue* addressed a defined contribution plan. The Court reasoned that "[f]or defined contribution plans ... fiduciary misconduct need not threaten the solvency of the entire plan to reduce benefits below the amount that participants would otherwise receive" and concluded that the "entire plan" principle of *Russell* therefore is not applicable to defined contribution plans. *Id.* at 255–56, 128 S.Ct. 1020. *See also Peabody v. Davis*, 636 F.3d 368, 373 (7th Cir.2011) (interpreting *LaRue* as holding that "a participant in a defined contribution plan may bring a § 502(a)(2) action for breach of fiduciary duty as to an individual account").

The ESOP in this case is a defined contribution plan, under which individual participants hold individual accounts. (Doc. 32, at 2.) Therefore, *Russell* is not applicable, and Plaintiff may bring a claim on her own behalf under § 502(a)(2).

### c) § 502(a)(3)

ERISA § 502(a)(3) provides a cause of action for plan participants or beneficiaries to "enjoin any act or practice" in violation of ERISA and "to obtain other appropriate equitable relief" in order to redress any violations of ERISA or enforce any provisions of ERISA or the terms of the plan. 29 U.S.C. § 1132(a)(3). The Complaint requests equitable relief pursuant to this section. (Doc. 3, at 18.)

The Ninth Circuit has held that § 502(a)(3) is a "catchall" provision that offers relief only where the plaintiff cannot obtain relief under other sections of ERISA. If other claims are "asserted under discrete ERISA provisions, the 'catchall' provision is not available as a source of relief." *Ford v. MCI Commc'ns Corp. Health & Welfare Plan*, 399 F.3d 1076, 1083 (9th Cir.2005) (overruled on other grounds by *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202 (9th Cir.2011)); *see also Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir.1997) (holding that equitable relief under § 502(a)(3) is not available where plaintiffs have received a damages award under § 502(a)(1)). This rule, of course, is binding on this court. *See, e.g., Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz., Inc.*, 661 F.Supp.2d 1076, 1090 (D.Ariz.2009); *Gallagher v. Life Ins. Co. of N. Am.*, 2008 WL 753733, at *12 (N.D.Cal. Mar. 19, 2008). Plaintiff specifically asserted a claim for breach of fiduciary obligation under § 502(a)(2) and, as discussed above, she may bring such a claim. Therefore, she may not bring a claim under the catchall provision of § 502(a)(3).

### 2. Legal Standard

Plaintiff's claims under § 502(a)(1)(B) and § 502(a)(2) are reviewed under different legal standards. In a claim for benefits under § 502(a)(1)(B), an ERISA plan administrator's denial of benefits is reviewed for abuse of discretion where the plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Conkright v. Frommert*, —— U.S. ——, 130 S.Ct. 1640, 1646, 176 L.Ed.2d 469 (2010); *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 111, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008). In this case, the ESOP grants the Committee "sole and discretionary authority to construe and interpret the terms of the" ESOP. (Doc. 32, at 8; Doc. 31–3, at 46.) Plaintiff appears to concede that abuse of discretion is the proper standard for reviewing her claim that the Committee improperly denied her the right to hold her account in Sundt stock until September 30, 2007. (Doc. 37, at 6.)

Plaintiff's claim under § 502(a)(2), however, is for breach of fiduciary duty. In analyzing this claim, the court therefore must determine whether Defendants violated the fiduciary duty imposed on them by ERISA. "Section 404(a)(1) of ERISA imposes a duty on Plan fiduciaries to invest Plan assets as a 'prudent man' would do." *Quan v. Computer Sciences Corp.*, 623 F.3d 870, 878 (9th Cir.2010) (quoting 29 U.S.C. § 1104(a)(1)). This means that a fiduciary must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims" and "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with" ERISA. *Id.* at 878 n. 5 (quoting 29 U.S.C. §§ 1104(a)(1)(B), (D)). Fiduciaries also must manage the plan "for the exclusive purpose of providing benefits to participants and their beneficiaries, and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A) (in-

ternal punctuation and subheadings omitted).

Because the review of a plan administrator's decisions under § 502(a)(2) arguably is more searching than the abuse of discretion review under § 502(a)(1)(B), *see Varity Corp. v. Howe*, 516 U.S. 489, 513–14, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), the court addresses Plaintiff's claim under the former section first.

### 3. § 502(a)(2)

Plaintiff's claims are based on two events: first, Peabody's statement that Plaintiff's account would remain in Sundt stock for approximately two years; and, second, the retroactive amendment of the ESOP, which resulted in Plaintiff's Sundt stock being converted to cash at its value as of September 30, 2006. (Doc. 3, at 8–12.)

#### a. Peabody's Representations

 The fiduciary duty of ERISA plan administrators encompasses "the duty not to make affirmative material misrepresentations to plan participants who inquire regarding possible changes in the plan." *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1180 (9th Cir.2004). There are two major ways in which an administrator may run afoul of this rule. First, he or she may fail to "provide complete and truthful information about any [plan] changes then under *serious consideration.*" *Id.* at 1180 (quoting *Bins v. Exxon Co. U.S.A.*, 220 F.3d 1042, 1045 (9th Cir.2000)); *see also Wayne v. Pac. Bell*, 238 F.3d 1048, 1050 (9th Cir. 2001). Serious consideration begins when a specific proposal is being discussed for purposes of implementation by senior management with the authority to implement

the change. *Mathews*, 362 F.3d at 1180. An administrator has no obligation to correct an earlier statement once serious consideration of changes that may make that statement untrue begins, unless an employee specifically requests that the employer keep him or her abreast of any changes in status. *Bins*, 220 F.3d at 1054. Second, an administrator may run afoul of his or her fiduciary duty by actively misinforming an employee about the future availability of benefits in order to induce him or her to retire early, regardless of whether any changes to those benefits are under serious consideration at the time that the statements are made. *Mathews*, 362 F.3d at 1182. An administrator actively misinforms an employee not only by saying that something is true when it is not true, but also "by saying that something is true when the person does not know whether it is true or not." *Wayne*, 238 F.3d at 1055.

 At some point before the end of September 2006, Peabody told Plaintiff that her account would take two years to convert out of Sundt stock. (Doc. 3, at 5.) There is no evidence that the ESOP amendment at issue here was under serious consideration at that time, and Plaintiff has not alleged that it was. Serious consideration of the amendment began no earlier than February 5, 2007, when the Committee discussed at a meeting the possibility of amending the plan to "segregate a participants [sic] account into cash soon [sic] as he or she terminates employment." (Doc. 31–2, at 13.)[1] Because the change in terms was not under serious consideration at the time of Plaintiff's conversation with

---

1. It is not entirely clear that this discussion constitutes serious consideration of the proposal that was actually implemented, because the description of the discussion does not indicate that a "specific proposal" was made, and the policy change described in the meet-

ing minutes is not exactly what was instituted (the minutes describe a proposal to convert as soon as an employee ceases employment rather than in the next Plan Year). In any event, "serious consideration" could not have begun any earlier.

Peabody, no material misrepresentation under the first theory occurred.

■ There is also no evidence that Peabody actively misinformed Plaintiff in order to induce her to retire early. It is true that, although Peabody's statement that historically it was taking two years to convert former employees' assets out of Sundt stock was true when it was made, Peabody's representation to Plaintiff that it *would* take that long for her own stock to be converted was a prediction which Peabody could not have known for certain was true. It is also true that Plaintiff's conversation with Peabody was precipitated by Plaintiff's interest in or decision to participate in the RIF. But Plaintiff has not alleged that Peabody knew at the time their conversation took place that she was considering participating in the RIF or that Peabody knew or believed that Plaintiff's decision to retire depended on how long she could keep her account in Sundt stock. Thus, there is no evidence that Peabody made any inaccurate statements in order to induce Plaintiff to participate in the RIF. A mere negligent misrepresentation may not lead to liability under ERISA. *Mathews*, 362 F.3d at 1183. The evidence before the court does not support the conclusion that Peabody's prediction was anything more than potentially negligent.

### b. Retroactive Amendment of ESOP

■ Plaintiff does not argue that Defendants violated ERISA by amending the terms of the ESOP but instead argues that they violated their fiduciary duty by applying the amendment *retroactively* to employees who had already separated from service. She also argues that the amendment was made in order to save the company money at the expense of ESOP participants. Finally, she argues that the retroactive amendment violated ERISA's "cutback" rule, which prevents fiduciaries

from decreasing "[t]he accrued benefit of a participant under a plan ... by an amendment of the plan." 29 U.S.C. § 1054(g)(1). (Doc. 37, at 9–11.)

At the outset, the court notes that the parties have not presented any cases in which an ERISA plan administrator was found to have violated his or her fiduciary duty by *failing* to maintain plan assets in the employer's stock during a period when the price of that stock was rising. However, courts have repeatedly addressed the mirror-image scenario in which a plan participant or beneficiary argued that ESOP administrators violated their fiduciary duty by maintaining plan assets in employer stock during a period when the price of that stock was falling. *See, e.g., Quan*, 623 F.3d at 875–76; *Moench v. Robertson*, 62 F.3d 553, 557–59 (3d Cir.1995). Several circuits, including the Ninth Circuit, have adopted the so-called "*Moench* presumption," under which an "ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision." *Quan*, 623 F.3d at 879–80 (quoting *Moench*, 62 F.3d at 571); *see also Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 254–56 (5th Cir.2008); *Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir.1995).

While the *Moench* presumption is not directly relevant to plan fiduciaries' decision *not* to invest assets in employer stock, the reasoning behind the cases that address it is relevant here. First, dictum in *Moench* presumption cases suggests that fiduciaries may in fact be liable for divesting plan assets out of employer stock and thereby causing plan participants to miss out on gain from that stock. *See Kirschbaum*, 526 F.3d at 256 (A fiduciary could be "sued for deviating from the plan [by selling employer stock] if the stock rebounded."); *Moench*, 62 F.3d at 571–72 ("[C]ourts must recognize that if the fidu-

ciary, in what it regards as an exercise of caution, does not maintain the investment in the employer's securities, it may face liability for that caution … if the employer's securities thrive."). Second, as Defendants point out, the *Moench* presumption is based in part on the policy aims behind ESOPs, namely, encouraging "employee productivity and loyalty." *Quan,* 623 F.3d at 881. However, those policy goals do not apply to former employees.[2] Third, these cases show that the terms of the plan in question determine the nature of the inquiry as to whether a fiduciary has discharged its duty: where the plan "requires the fiduciary to invest in a particular stock," the fiduciary must do so unless compliance would be impossible or illegal, but "[w]hen the instrument only allows or permits a particular investment, the fiduciary must still exercise care, skill, and caution in making decisions to acquire or retain the investment." *Moench,* 62 F.3d at 571 (internal quotation marks omitted). Finally, in cases challenging an ESOP fiduciary's decision to retain or sell employer stock, the focus of the inquiry is on "how the fiduciary acted, not whether his investments succeeded or failed." *Kirschbaum,* 526 F.3d at 253 (internal quotation marks omitted).

Here, several considerations support the conclusion that Defendants did not violate their fiduciary duty by applying the ESOP amendment retroactively to Plaintiff.

First, and most significantly, even if there had been no amendment, the terms of the ESOP would have permitted Defendants to convert Plaintiff's stock as of September 30, 2006, because the pre-amendment ESOP gave the Committee the right to hold the individual accounts of former employees in assets other than Sundt stock, provided they did so based on a nondiscriminatory policy. (Doc. 31–1, at 27–28.) Indeed, the ESOP gave the Committee discretion to invest the assets of *current* employees in other prudent investments or temporarily in cash. (*Id.,* at 15.) Second, while it is clear in hindsight that Defendants made a bad investment decision on Plaintiff's behalf, there is no evidence in the record that the stock price had risen, or that Defendants knew or expected that the price would rise further, when the Plan was amended in May 2007. The parties have supplied only the value of Sundt stock at the end of each Plan Year (that is, as of September 30) from 2003 to 2007. (Doc. 38, at 1–2.)[3] Although Plaintiff herself anticipated an increase in the price of Sundt stock in 2006, she has not alleged that Defendants anticipated such an increase in price in May of 2007, nor has she proffered facts tending to show that they had reason to anticipate such an increase. Given that the court must evaluate the process by which Defendants made their decision, and not the outcome of the decision, there is no reasonable basis for con-

2. Defendants' memorandum seems to imply that the *Moench* presumption may not protect the decision of plan fiduciaries to keep former employees' account assets in employer stock and thus that they had a *duty* to diversify former employees' account assets, despite the fact that ERISA, 29 U.S.C. § 1104(a)(2), specifically provides that fiduciaries of an ESOP do not violate their duty to diversify when they acquire or hold employer stock. (Doc. 30, at 31.) Defendants point to no caselaw to support this implied argument, however.

3. Individual ESOP accounts were valued only once a year, at the end of each Plan Year. (Doc. 32, at 2.) It is not clear from the evidence before the court whether the value of Sundt stock was determined or known to Defendants at points in time other than the conclusion of each Plan Year. The version of the ESOP in effect at the time of the amendment provided that the value of Sundt stock was to be determined by the Committee based upon a valuation by an independent appraiser; it is unclear how frequently such valuations took place for purposes other than valuing ESOP accounts. (Doc. 31–1, at 9.)

cluding that Defendants breached their fiduciary obligations.

Plaintiff asserts in her Opposition to the Motion for Summary Judgment that "Defendants changed the Plan in response to a study that demonstrated that it was in the company's interest to redeem SUNDT stock sooner rather than later" and that the decision to convert her stock at its September 30, 2006, value was "an impermissible act of self-dealing." (Doc. 37, at 9.) With reasonable evidentiary support, this assertion conceivably could form the basis for a conclusion that Defendants breached their fiduciary obligations, which required them to act "for the exclusive purpose of providing benefits to participants and their beneficiaries, and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A) (internal punctuation and subheadings omitted). But the record does not provide any support for this conclusion. Defendants' Separate Statement of Facts, which Plaintiff has not contested, states only that the Committee made the decision to amend the terms of the ESOP based on certain "repurchase liability studies and recommendations." (Doc. 32, at 5.) Neither the Complaint nor Plaintiff's Separate Statement of Facts makes any allegations about the content of these studies and recommendations that would support an inference that Defendants' decision was motivated by a desire to enrich Sundt at the expense of the ESOP participants. The actual studies and recommendations have not been submitted into evidence. "There is no issue for trial unless there is sufficient evidence favoring the non-moving party." *Allen v. Honeywell Retirement Earnings Plan*, 382 F.Supp.2d 1139, 1148 (D.Ariz.2005). Absent any evidence that Defendants' decision was based on the motivations asserted by Plaintiff, summary judgment may not be denied on this basis.

Moreover, the bare fact that Sundt may have stood to gain from actions that would harm the economic interests of ESOP participants, such as repurchasing stock from those participants at a lower rather than a higher price, does not by itself mean that a breach of fiduciary obligation occurred. Because such a potential conflict of interest is inevitable, ESOPs are exempt from the strict prohibition against self-dealing that is applicable to other plans under ERISA. *See Moench*, 62 F.3d at 568.

Plaintiff also argues that the retroactive amendment of the ESOP terms "decreased" her "accrued benefit" under the Plan, in violation of 29 U.S.C. § 1054(g). Only a decrease of *accrued* benefits violates this provision; "the elimination of future *expected* accruals of benefit" is not a violation. *Campbell v. BankBoston, N.A.*, 327 F.3d 1, 8 (1st Cir.2003). For individual account plans like the one at issue here, "accrued benefit" is defined as "the balance of the individual's account." 29 U.S.C. § 1002(23).

The right to have her ESOP account remain in Sundt stock until September 30, 2007, was not an accrued benefit for Plaintiff. As discussed above, under the pre-amendment terms of the ESOP, the Committee retained discretion to move the accounts of former employees out of Sundt stock at any time, provided this was done on a nondiscriminatory basis. (Doc. 31–1, at 27–28.) Multiple notices sent by Sundt to Plaintiff and other employees prior to the amendment stated that separated employees' account balances would be converted out of Sundt stock "as soon as sufficient cash becomes available within the" ESOP trust. (Doc 31–2, at 6, 8, 9.) Moreover, the balance of an individual's account was valued only once a year, on September 30. (Doc. 32, at 2.) Thus, as of May 2007, the balance of Plaintiff's account

was its value as of September 30, 2006, and the application of the amendment to her did not reduce that balance. Because the retroactive amendment did not result in any decrease of an accrued benefit for Plaintiff, there was no violation of the cut-back rule.

### 4. § 502(a)(1)(B)

 The factors discussed above with respect to Plaintiff's § 502(a)(2) claim support the conclusion that Defendants did not abuse their discretion in determining that Plaintiff's Sundt stock should be valued as of September 30, 2006. Under the terms of the ESOP even prior to the May 2007 amendment, the Committee retained the discretion to move Plaintiff's account out of Sundt stock in the Plan Year following the termination of her employment, which necessarily would mean that her stock would valued as of the end of the Plan Year in which she retired (the last prior valuation date). When a plan administrator has a conflict of interest with respect to a benefits decision, the court must weigh that as a factor in determining whether the administrator abused its discretion. *See Glenn*, 554 U.S. at 111, 128 S.Ct. 2343. However, as discussed above, Plaintiff has not offered any evidence to demonstrate that Defendants knew that Sundt stood to gain from an earlier rather than a later conversion of her Sundt stock to cash.

### CONCLUSION

Accordingly,

**IT IS ORDERED:**

1. Defendants' Motion for Summary Judgment (Doc. 30) is **GRANTED.**

2. The Clerk shall enter judgment for Defendants accordingly.

3. Defendants shall recover their costs from Plaintiff.